IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DANIEL DAVID HARP,

Defendant.

**4:21CR3008**

**FINDINGS AND RECOMMENDATION**

Defendant Daniel David Harp moves to suppress the firearm found in the vehicle he was driving on May 28, 2020, claiming it was found during an unlawful search. (Filing No. 19). Harp claims: (1) the officer did not have probable cause to initiate the traffic stop; (2) he was unlawfully detained; (3) that the search of the pill box on Harp's person was unlawful; and, (4) because the officer determined there was probable cause to search the vehicle based on the contents of the pill box, the shotgun seized was "fruit of the poisonous tree." Harp's motion to suppress should be denied in its entirety.

STATEMENT OF FACTS

After hearing the testimony, observing the witnesses, and reviewing the documentary and video evidence, the undersigned magistrate judge finds the following facts are credible.

On May 28, 2020, Investigator Josh Berlie, a drug task force officer with the Grand Island Police Department, and others conducted surveillance on the residence of Bryan Brown in Grand Island, Nebraska. The police department had intelligence that Brown was involved in weapons and drug trafficking. Officers were

advised via safety bulletins in January 2020 that Brown was selling guns, storing them in his home, and trading narcotics for firearms. This information was corroborated by a proffer interview conducted by the Central Nebraska Drug and Safe Streets Task Force in March 2020. Berlie was aware of reports called into Crime Stoppers of suspicious activity consistent with drug transactions at Brown's residence. Brown's name also came up routinely in Berlie's interviews with incarcerated persons regarding where they had received guns or drugs. During a briefing prior to the surveillance operation at Brown's home on May 28, 2020, officers were informed that Brown was considered armed and dangerous.

During his surveillance of the property, Berlie observed Brown walk from the target residence and approach a white Infinity SUV that had been parked across the street. Brown got into the passenger side of the SUV and the vehicle drove away. Berlie followed the SUV in an unmarked police vehicle, travelling several car lengths behind. Berlie observed the SUV activate its turn signal approximately 24 feet from a stop sign, then turn right from Anna Street onto Blaine Street. Nebraska requires drivers to signal a turn continuously beginning at least 100 feet from the turn. Berlie informed Officer Jose Rodriguez, who was in a marked patrol car, of the observed traffic violation.

Rodriguez began following the SUV and planned to stop it based on Berlie's observation. He followed the SUV for approximately 10 blocks attempting to "clear" the vehicle that traveled between the SUV and the patrol car. At an intersection Rodriguez observed, through the windows of the car in front of him, the SUV driver failed to continuously signal at least 100 feet before turning right onto Faidley Avenue. Rodriguez activated his overhead lights and stopped the SUV. Defendant Harp was identified as the driver and Brown was in the front passenger seat. Harp provided a valid registration but was not immediately able to provide proof of insurance. Officer Bourke Bowen, a dog handler with the Grand Island Police

Department arrived at the scene with his canine to provide assistance if a second officer or a dog sniff was needed.

Rodriguez asked Harp to step out of the vehicle. When asked whether he had any weapons, Harp said he had a pocketknife, which Rodriguez retrieved. When Rodriguez patted Harp for additional weapons, he felt a small rectangular container in Harp's pocket. Rodriguez asked Harp if he had Tic-Tacs in his pocket. Harp responded "Tic-Tacs or medicine, one of the two," stating that the containers were about the same size. Rodriguez asked for, and was given, consent to reach into Harp's pockets to retrieve the container. Rodriguez asked Harp if he had prescriptions for the medicine, and Harp said, "oh yeah, everything." (Ex. 101). Noting that the container was unmarked and did not contain a prescription label, Rodriguez asked Harp what kind of pills they were. Harp said they included a blood pressure medication, "muscle relaxers" and "alprazolam" for anxiety. (Ex. 101).

Rodriguez told Harp that he would run a records check for Harp and Brown and a check of the SUV. While waiting for the results of the check Rodriguez searched a drug website to verify the type of pills Harp carried and determine whether they were controlled substances. Rodriguez confirmed there was Alprazolam in the container. Alprazolam is a Schedule IV controlled substance that should have been carried in its original prescription container. Rodriguez found he had probable cause to search the vehicle based upon the identification of the controlled substance, so Bowen and the canine left the scene of the stop.

Rodriguez requested Harp present prescriptions for the medications. Harp said the prescriptions were at his home. When asked to provide proof, Harp initially said that he could not, but then said he would attempt to if he could use his phone. Harp gave permission for Rodriguez to get the phone from the front console of the SUV. Harp ultimately did not provide a prescription and Rodriguez began a search

of the vehicle. Rodriguez found marijuana crumbs, also known as "shake" throughout the floorboard and several shotgun shells in the cabin. He found a black backpack containing a digital scale, several plastic baggies, syringes, a knife, a metal spoon, and a butane refill brass pin. The backpack contained mail addressed to Harp. Another officer found a shotgun in the backseat of the SUV under a seat. Harp was arrested and charged in a single-count indictment with Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).

## ANALYSIS

The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

### Probable Cause to Stop

Defendant Harp argues "Officer Rodriguez initiated the stop when he could not have been sure a violation was committed." (Filing No. 20 at CM/ECF p. 3). He asserts the video from Officer Rodriguez' cruiser does not show when and where Defendant's turn signal was activated, therefore the officer was without probable cause to believe a traffic violation had occurred.

"A traffic stop is a seizure within the meaning of the Fourth Amendment and, as such, must be supported by reasonable suspicion or probable cause." United States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008). Probable cause to conduct a traffic stop exists as long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law. See United States v. Gordon,

741 F.3d 872, 876 (8th Cir. 2013). A traffic stop is valid even if a police officer "would have ignored the traffic violation but for their suspicion that greater crimes are afoot." United States v. Long, 532 F.3d 791, 795 (8th Cir. 2008).

The Nebraska Rules of the Road require a person turning to give an appropriate signal. Neb. Rev. Stat. § 60-6,161. "A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." Neb. Rev. Stat § 60-6,161(2).

Investigator Berlie observed Harp's vehicle signal a turn approximately 24 feet prior to turning, which he testified is not legal. He was in communication with Officer Rodriguez by cell phone and with a team of officers using the in-car radio system. He notified Officer Rodriguez of the observed traffic violation and that there was probable cause to initiate a stop. Officer Rodriguez thereafter observed Harp's vehicle commit the same traffic violation at a separate intersection.

Defendant argues that due to a vehicle located between Harp's vehicle and Officer Rodriguez' cruiser, Officer Rodriguez could not have seen the second alleged traffic violation for failure to signal. While that turn signal does not appear on the video recording, the video equipment is in a fixed location and would not capture everything the officer would see. More importantly, even without the video evidence from Officer Rodriguez' cruiser, based on the officers' testimony, the undersigned magistrate judge finds that Investigator Berlie and Officer Rodriguez each observed the driver of the white SUV commit the same traffic violation two separate times. Officer Rodriguez had probable cause to initiate a traffic stop the vehicle based on not only his own observations, but also those of Investigator Berlie. See United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013), (citing United States v. Robinson, 119 F.3d 663, 8th Cir. (1997) ("An officer may rely on

information provided by other officers and all of the information known to the team of officers involved in the investigation to provide justification for a stop.")).

Discovery and Search of Pill Container

Citing propositions in Terry v. Ohio, 392 U.S. 1 (1968), regarding the propriety of a pat down search, Defendant Harp argues that that "Officer Rodriguez was not justified, under the totality of the circumstances, in opening the box and then, detaining Mr. Harp to research the pills." (Filing No. 20 at CM/ECF p.4).

To the extent that Defendant may argue that the pat down search was improper, this argument fails.

> A police officer may conduct a pat-down search to determine whether a person is carrying a weapon if the officer has a reasonable suspicion "that criminal activity may be afoot and that the person[ ] with whom he is dealing may be armed and presently dangerous." Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To establish that a pat-down search was supported by reasonable suspicion, the police officer need not be "absolutely certain," but "must be able to point to specific and articulable facts." Id. at 27, 21, 88 S.Ct. 1868. "In determining whether an officer had reasonable suspicion based on specific, articulable facts, we 'look at the totality of the circumstances, allowing officers to draw on their experience and training.' " United States v. Lawhorn, 735 F.3d 817, 820 (8th Cir. 2013) (quoting United States v. Hughes, 517 F.3d 1013, 1016 (8th Cir. 2008)).

United States v. Aguilar, 811 F. App'x 391, 392 (8th Cir. 2020)

The evidence shows that Harp's vehicle was observed leaving a residence that was subject to surveillance as part of a larger drug and weapons trafficking

investigation.[1] The target of the investigation was observed entering Harp's vehicle and was considered armed and dangerous.[2] In addition, during the traffic stop Defendant Harp told Officer Rodriguez that he had a pocketknife on his person. A review of the totality of the circumstances indicates Officer Rodriguez had reasonable suspicion to conduct a pat-down search based on specific, articulable facts. The decision to conduct a pat-down search was proper under the Fourth Amendment. This conclusion, however, does not end the inquiry.

The issue is whether the officer who conducted the search was justified in seizing and searching the pill container. Harp argues Rodriguez could not properly open the container because it could not have contained a weapon.

When Rodriguez pat searched Harp for weapons, he asked if Harp was carrying Tic-Tacs. Harp voluntarily stated that the container had "either Tic-Tacs or medicine" and he told the officers that he had a prescription for "everything" referring to the medication. After removing the container from Harp's pocket with his consent, Rodriguez asked what kind of medicine was inside and Harp responded that it was muscle relaxers and medication for anxiety. This indicated that the container held a mixture of medication in a single container, and that it contained prescription medication which was not carried in its original container. Rodriguez observed that the container did not have a pharmacy label or prescription information and Harp was unable to provide a prescription for these medications.

---

[1] See United States v. Bustos-Torres, 396 F.3d 935, stating "Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction."

[2] In United States v. Trogdon, 789 F.3d 907 (8th Cir. 2015), the Eighth Circuit stated that officers were entitled to take into account Trogdon's association with a murder suspect, who was the subject of a bulletin warning officers that he could be armed and dangerous, in determining whether Trogdon might also be armed.

Harp's answers to the officer's inquiry gave Rodriguez probable cause to believe that Harp was either in possession of controlled substances without a prescription or that he failed to maintain prescribed controlled substances in the appropriate container, as provided by a pharmacist. See Neb. Rev. Stat. § 28-417(1)(f)(1) (It shall be unlawful for any person "To whom and for whose use any controlled substance has been prescribed, sold, or dispensed by a practitioner . . . to possess it in a container other than which it was delivered to him or her by the practitioner.") Further the officers involved were part of a surveillance team targeting drug and weapons trafficking, and Harp was accompanied by the primary target of the trafficking investigation.

The Eighth Circuit has held that "simply observing the presence of containers that are known to typically contain illegal narcotics gives rise to probable cause to perform a warrantless search of a vehicle." United States v. West, 280 F. App'x 563, 566 (8th Cir. 2008). Officer Rodriguez is a drug recognition expert and is familiar with the requirements that controlled substances be prescribed by a doctor or physician and kept in the original, properly-labeled container. A reasonable officer in his position would have probable cause to believe that the container and its contents were contraband or evidence of a crime.[3] Thus Rodriguez was justified in opening the container to inspect the contents to determine whether it contained controlled substances in violation of Nebraska law.

Unlawful Detention

[3] In response to Plaintiff's argument, the government asserts the plain view doctrine applies. Having found that the officer had probable cause to open the pill container, the court need not address whether the plain view doctrine is applicable under the circumstances.

Harp asserts but does not offer support for an argument that he was unlawfully detained while Rodriguez attempted to identify the pills in the container. Harp's argument that the firearm should be suppressed on this basis should be denied. See NeCrimR. 12.3(b)(1) ("A party's failure to brief an issue raised in a motion may be considered waiver of that issue.").

Additionally:

> Once the stop of a vehicle has occurred, a "police officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir.1999); see also United States v. Brown, 345 F.3d 574, 578 (8th Cir.2003). "[I]f the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions."

United States v. Barragan, 379 F.3d 524, 528–29 (8th Cir. 2004).

The time taken to identify the pills did not inappropriately extend the traffic stop or Harp's detention. Officer Rodriguez testified that he attempted to identify the pills while waiting for the results of the license, criminal history, and vehicle checks, all of which are within the proper scope of a traffic stop. See Barragan, supra.

Inevitable Discovery

The government asserts that even if the search of the SUV was undertaken without probable cause, the firearm would have been inevitably discovered. "For the inevitable discovery doctrine to apply, there must have been a reasonable

probability the evidence would have been discovered in the absence of police misconduct, and the police must have been pursuing a substantial, alternative line of investigation." United States v. Alvarez–Gonzalez, 319 F.3d 1070, 1072 (8th Cir.2003). In this case, Officer Bowen and his canine were present shortly after the stop of Harp's vehicle and were prepared to perform a sniff around the vehicle. Nonetheless, believing he had probable cause to search the vehicle based upon Harp's possession of the pills without a prescription, Rodriguez told Bowen that a dog sniff would not be necessary.

In analyzing inevitable discovery, "it is important to focus not on what the officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred." United States v. McManaman, 673 F.3d 841, 846 (8th Cir. 2012).

"If a defendant is detained incident to a traffic stop, the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed. United States v. Fuehrer, 844 F.3d 767, 773 (8th Cir. 2016). The Supreme Court has held that "the use of a well-trained narcotics-detection dog … during a lawful traffic stop, generally does not implicate legitimate privacy interests." Id. "As long as a traffic stop is not extended in order for officers to conduct a dog sniff, the dog sniff is lawful." Id.

If Rodriguez had not established probable cause to search the pill container, Officer Bowen and his canine were standing by at the scene and would have conducted a dog sniff around the SUV for the presence of narcotics. Bowen would have deployed the canine while Rodriguez conducted the license and vehicle checks as part of the traffic stop. No reasonable suspicion would have been required to conduct a canine search, and the canine search would not have extended the traffic stop.

Even if deploying the dog would have extended the stop, there would have been reasonable suspicion to do so. The officers had intelligence concerning alleged drug and weapons trafficking activity at the residence that the SUV had just left and concerning the individual who was a passenger in the car. Both Harp and Brown carried weapons on their person, and Harp potentially had controlled substances in his pocket.

The evidence shows there was a detectable amount of marijuana "shake" which Rodriguez observed on the floorboard throughout the SUV. There is a reasonable probability that a certified drug dog trained to detect marijuana and other drugs would have indicated and alerted to the marijuana on the floorboard, thereby giving the officers probable cause to search the SUV and ultimately locate the shotgun. See Florida v. Harris, 568 U.S. 237, 246 (2013) (stating "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert."). Even if Rodriguez' search of the container on Harp's person was unlawful, the vehicle would have been inevitably discovered during a probable cause search following a positive canine sniff. The evidence found within the vehicle should not be suppressed.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 19) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, Chief United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **August 9, 2021**, or as soon thereafter as the case may be called, for a duration of three (3) trial days. This

case is subject to the prior trial of criminal cases and such other civil cases as may be scheduled for trial before this one. Jury selection will be held at the commencement of trial.

Dated this 25th day of June, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge